UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/3/2016
```

-------------------------------------------------------------X

RUSSELL HENRY,                              :
                                            :
                    Plaintiff,              :        12-cv-2647 (NSR)
        -against-                           :
                                            :        OPINION AND ORDER
                                            :
THE VILLAGE OF TUCKAHOE and                 :
THE VILLAGE OF TUCKAHOE POLICE              :
DEPARTMENT,                                 :
                                            :
                    Defendants.             :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

        Russell Henry ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights during his arrest and subsequent incarceration at the

Tuckahoe Police Department against defendants the Village of Tuckahoe and the Village of

Tuckahoe Police Department (collectively, "Defendants").[1] Before the Court is Defendants'

Motion for Summary Judgment. Plaintiff has not submitted opposition to Defendants' motion.

For the following reasons, Defendants' motion is GRANTED.

PLAINTIFF'S FAILURE TO FILE A RULE 56.1 STATEMENT

        Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern

Districts of New York (the "Local Rules") requires a party moving for summary judgment to

submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as

to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a).

---

[1] The remaining defendants (the City of Yonkers and the City of Yonkers Police Department) were terminated
pursuant to settlement. (*See* ECF No. 44.)

When the opposing party fails to respond to the moving party's Rule 56.1 Statement, "the material facts contained in the moving party's statement are deemed admitted as a matter of law." *Wali v. One Source Co.*, 678 F.Supp.2d 170, 177-78 (S.D.N.Y. 2009) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); Local R. 56.1(c)); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court has "broad discretion" to refuse to consider "what the parties fail to point out in their Local Rule 56.1 statements") (internal quotation marks omitted). In the instant case, Plaintiff has failed to file a Local Rule 56.1 statement and has not submitted any exhibits, affidavits, or evidence. Accordingly, the Court will deem admitted Defendants' facts as asserted in their Local Rule 56.1 statement.

## FACTUAL BACKGROUND

Plaintiff's claims arise from the events of February 16 and 17, 2009, when Plaintiff was arrested and subsequently hospitalized. (*See generally* Defendants' 56.1 Statement ("Defs.' 56.1"), ECF No. 54.) On the night of February 16, 2009, Plaintiff's oldest daughter, Mikaela, was staying with her mother, Ayanda Rouse, at her grandmother's, Debra Mercer's, house. (*Id.* ¶ 6.) Plaintiff and Ms. Rouse were scheduled to appear in Family Court the following day. (*Id.* ¶ 7.) Around midnight on February 16, the power in Ms. Mercer's house was shut off, and Ms. Mercer believed that Plaintiff—who had shown up at the house uninvited—was responsible because the electrical box for her house is located in an unlocked portion of the basement in her building. (*Id.* ¶¶ 8-9, 11.) Ms. Mercer telephoned the police and spoke to Sgt. Stephen Klika at the Tuckahoe Police Department. (*Id.* ¶¶ 9-10.) In response to Ms. Mercer's call, Sgt. Klika dispatched two officers to Ms. Mercer's home: Christopher Santiago and Michael Guttman. (*Id.* ¶ 12.)

2

When the officers arrived at the scene, Plaintiff was in the lobby of Ms. Mercer's building. (*Id.* ¶ 14.) Plaintiff cannot recall whether or not he consumed alcohol prior to arriving at Ms. Mercer's home, but he did remember taking the narcotic Percocet earlier that day. (*Id.* ¶¶ 15-16.) Officer Guttman began to question Plaintiff and asked him what he was doing at Ms. Mercer's residence, to which Plaintiff responded that he was visiting his girlfriend and his daughter. (*Id.* ¶¶ 17-19.) Officer Guttman then spoke with Ms. Rouse who informed him that she believed that Plaintiff had turned off the power in her mother's home. While Ms. Rouse was speaking with Officer Guttman, Ms. Mercer and Plaintiff began to argue, so Officer Guttman escorted Plaintiff outside the building. (*Id.* ¶¶ 21-22.)

Meanwhile, Sgt. Klika ran a New York license check on Plaintiff and found an active warrant for him issued by a City Court Judge in the City of Yonkers. Sgt. Klika confirmed that the warrant was still active with the Yonkers Police Department and subsequently informed Officer Guttman of the active warrant. (*Id.* ¶¶ 25-26.)  As a result, Officer Guttman placed Plaintiff under arrest due to the Yonkers warrant. (*Id.* ¶¶ 27-28.) The Yonkers warrant was issued for Plaintiff's failure to appear at a hearing in August of 2007, following an arrest for aggravated driving without a license. (*Id.* ¶¶ 50-53.)

Officer Guttman placed Plaintiff in handcuffs and drove him to the Tuckahoe Police Station, where he escorted Plaintiff to Squad Room No. 1 to wait until the Yonkers Police arrived to pick him up. (*Id.* ¶¶ 29-30.) While waiting, Plaintiff informed Officer Guttmann that the power in Ms. Mercer's house shuts off when too many electrical devices are used. (*Id.* ¶ 31.) Plaintiff also requested a cigarette multiple times, to which Officer Guttman replied that no one can smoke in the building. (*Id.* ¶¶ 32-34.)

3

At approximately 1:17 a.m. on February 17, Plaintiff closed his eyes and appeared to lose consciousness. (*Id.* ¶ 35.) Officer Guttman, a trained EMT, laid Plaintiff on the ground, on his back, and checked his pulse. (*Id.* ¶ 36.) Officer Guttman additionally performed a sternum rub. (*Id.* ¶ 37.) At this point, Officer Santiago, who was outside of the room, entered the room. (*Id.* ¶ 39.) Both officers believed that Plaintiff was pretending to lose consciousness. (*Id.* ¶¶ 38, 40.) Despite the officers' belief that Plaintiff was pretending, Sgt. Klika called for medical assistance. (*Id.* ¶ 41.)

While awaiting medical assistance, the Yonkers Police arrived. (*Id.* ¶ 42.) When the emergency medical technicians ("EMTs") arrived, one of the EMTs lifted Plaintiff's eyelids to check his pupils, and as he did so, Plaintiff closed his eye tightly. (*Id.* ¶ 43.) Nevertheless, Plaintiff was transported by ambulance to Lawrence Hospital, accompanied by Officer Santiago, three EMTs, and members of the Yonkers Police Department.  (*Id.* ¶¶ 44-46.)  While at the hospital, Plaintiff was handcuffed and strapped to the stretcher. (*Id.* ¶¶ 69, 72.) One of the police officers warned Plaintiff not to move as the officer removed the straps. (*Id.*) When the straps were removed, Plaintiff attempted to jump off the stretcher while still handcuffed, causing himself and the stretcher to fall to the floor. (*Id.*)

On March 11, 2009, Plaintiff filed a complaint with the Tuckahoe Police Department, alleging that he was assaulted while at the police station and at the hospital. (*Id.* ¶¶ 80-81.) In response, the Tuckahoe Police Department conducted an investigation of Plaintiff's claims, led by Detective Kevin Ferry. (*Id.* ¶¶ 82-83.) Detective Ferry interviewed Sgt. Klika, Officers Santiago and Guttman, Mark Blombatt (the EMT that treated Plaintiff at the Tuckahoe Police Department), EMT Bellantoni, EMT Nachman, and Imelda McGuinness (the ambulance driver). (*Id.* ¶ 84.) Mr. Blombatt informed Detective Ferry that he believed that Plaintiff was pretending

4

to be unconscious and that Plaintiff had no cuts or marks on his body. (*Id.* ¶ 85.) Detective Ferry attempted to interview Plaintiff on numerous occasions, but Plaintiff never returned Detective Ferry's phone calls. (*Id.* ¶¶ 87-89.)

On July 16, 2009, Plaintiff appeared before the Hon. Charles D. Wood of the Yonkers City Court regarding the charges leading to his warrant. (*Id.* ¶ 90.) Plaintiff pleaded guilty to the charge of aggravated driving without a license. (*Id.* ¶ 91.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

5

quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

"The fact that Plaintiff failed to comply with Local Rule 56.1 does not absolve the party seeking summary judgment of this burden of showing that it is entitled to judgment as a matter of law." *DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R.*, 237 F. App'x 642, 644 (2d Cir. 2007) (internal citations, alterations, and quotation marks omitted). Moreover, "[t]he fact

6

that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam). The moving party must nevertheless meet its burden.

## DISCUSSION

Plaintiff brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, abuse of process, and deprivation of liberty without due process, unreasonable seizure, excessive force, and deprivation of freedom of speech against Defendants Village of Tuckahoe and the Tuckahoe Police Department.[2] Importantly, Plaintiff does not bring any state law claims; the Complaint is clear that Defendants' acts are "all in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." (Complaint, ECF No. 1, at 6.) Accordingly, all of the claims are federal law claims, brought pursuant to § 1983.

As an initial matter, "a police department is an administrative arm of the municipal corporation, and cannot be sued … under *Monell* because it does not exist separate and apart from the municipality and does not have its own legal identity." *Green v. City of Yonkers*, N.Y., No. 10 CIV. 3653 JFK, 2012 WL 554453, at *6 (S.D.N.Y. Feb. 21, 2012) (citing *Griffith v. Sadri*, No. 07 Civ. 4824, 2009 WL 2524961 (E.D.N.Y. Aug. 14, 2009)) (internal citation and quotation marks omitted); *Monell v. Dep't of Soc. Serv's.*, 436 U.S. 658, 694 (1978). Therefore, the Tuckahoe Police Department is entitled to summary judgment with respect to all the causes of action in which it is named.

---

[2] Plaintiff's complaint additionally alleges a claim for summary punishment. (Complaint, ECF No. 1, at 6.) The Court is not aware of a legal basis for a "summary punishment" claim but concludes that the claims addressed herein adequately represent Plaintiff's complaints.

7

Accordingly, only the Village of Tuckahoe—a municipality—remains as a defendant. A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom ... inflicts the injury." *Monell*, 436 U.S. at 694. Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal citation omitted).  First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."  *Id*. (internal citation omitted).  Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).  A plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim, and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, but in the absence of other evidence, a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury."  *Sams v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 125 (1988) (plurality opinion) (explaining that only municipal officials with "final

policymaking authority" concerning particular activities giving rise to plaintiff's claims "may by their actions subject the government to § 1983 liability") (internal citation omitted).

Here, Plaintiff's *Monell* claim is based on conclusory, boilerplate allegations, (*see* Complaint ¶¶ 28-33), and relates only to a single incident. (Defs.' 56.1, ¶ 76). Specifically, Plaintiff has not alleged or provided evidence of any incidents of excessive force involving the Tuckahoe Police Department prior to February 16, 2009. (*Id.*) Additionally, Plaintiff has not alleged or provided evidence that the Village of Tuckahoe failed to train its police officers, and there is no evidence in the record that either Tuckahoe police officer involved—Santiago or Guttman—was an official with "final policymaking authority." *City of St. Louis*, 485 U.S. at 123, 125. Without any evidence whatsoever to support the existence of an unconstitutional municipal policy, Plaintiff's *Monell* claim against the Village of Tuckahoe fails as a matter of law.

## CONCLUSION

Accordingly, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 51 and enter judgment for Defendants.

Dated:    August 3rd, 2016                                   SO ORDERED:
          White Plains, New York

                                                          _____
                                                          NELSON S. ROMÁN
                                                          United States District Judge

9